

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

April 12, 2005

Jeffrey Denner, Esq.
4 Longfellow Place, 35th Floor
Boston, MA 02114

George Gormley, Esq.
655 Summer Street
Boston, MA 02210

> Re:   United States v. ALVIN REEVES AND ALVENIA REEVES
>       Criminal No. 04-10311

Dear Counsel:

Pursuant to Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, the government provides the following automatic discovery in the above-referenced case:

A.   Rule 16 Materials

1.   Statements of Defendant under Rule 16 (a)(1)(A)

     a.   Written Statements

There are no relevant written statements of the defendants ALVIN REEVES or ALVENIA REEVES in the possession, custody or control of the government, which are known to the attorney for the government.

     b.   Recorded Statements

Consensual tape recordings were made of telephone conversations involving the defendant ALVIN REEVES and ALVINIA REEVES when he was incarcerated. These recordings are available for your review and copies are available for defense counsel.

c.    Grand Jury Testimony of the Defendant

The defendant ALVIN REEVES did not testify before a grand jury in relation to this case.

d.    Oral Statements to Then Known Government Agents

A copy of Postal Inspector Paul Durand's October 5, 2004 Memorandum of Interview of Alvin Reeves, is enclosed.

2.    Defendant's Prior Record under Rule 16 (a)(1)(B)

It is my understanding that you have already been provided a copy of each defendants criminal records by Pretrial Services. If you would like an additional copies of defendants records, please contact me.

3.    Documents and Tangible Objects under Rule 16(a)(1)(C)

All books, papers, documents and tangible items which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial of this case, or were obtained from or belong to the defendant, may be inspected by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time.

4.    Reports of Examinations and Tests under Rule 16 (a)(1)(D)

There presently are no reports of physical or mental examinations or scientific tests or experiments made in connection with this case.

B.    Search Materials under Local Rule 116.1(C)(1)(b)

A search warrant was executed at 14 Francis Drive, Apartment 8 on September 15, 2004. A copy of the search warrant, application, affidavit, and return are enclosed.

C.    Electronic Surveillance under Local Rule 116.1(C)(1)(c)

No oral, wire, or electronic communications of the defendants as defined in 18 U.S.C. § 2510 were intercepted relating to the charges in the indictment, except as detailed below.

D.    Consensual Interceptions under Local Rule 116.1(C)(1)(d)

Telephone communications of the defendant ALVIN REEVES which were consensually recorded while ALVIN REEVES was incarcerated subsequent to his arrests in September 2004, may contain communications relating to the charges contained in the indictment which the government may offer as evidence in its case-in-chief.    As noted above, in paragraph A.1.b, copies of these recordings are available for your review.

E.    Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)

As to the conspiracy charged in Count One of the indictment, the following is a list of the names of known unindicted coconspirators, who participated in all or any part of the conspiracy described in Count One of the Indictment:

Evan Allison; Anthony Buchanan; Billie Chapman; Lisa Cooper; Arthur Ford; Hennissey Gomez; Veronica Gorlovsky; Will Leaston; George Mongo; Arthur Simmons; Barry Dent Smith; Dwayne Thomas; Francies Toriano; Laketha Washington; and Tiombe Weaver.

The names of known unindicted coconspirators as to the conspiracy charged in Count One of the indictment are set forth in a separate letter, dated April 12, 2005, to defense counsel.

At this time, I am unaware of the names of any known unindicted coconspirators as to the conspiracy charged in Count Two of the indictment.

F.    Identifications under Local Rule 116.1(C)(1)(f)

I have no information indicating that the defendant ALVIN REEVES or the defendant ALVENIA REEVES was the subject of an investigative identification procedure used with a witness the government anticipates calling in its case-in-chief involving a line-up, show-up, photo spread or other display of an image of the defendant.    In the event that I become aware that such a procedure was used, I will advise you at that time and provide you with copies of any tangible evidence reflecting, used in or memorializing the identification procedure.

G.    Exculpatory Evidence Under Local Rule 116.2(B)(1)

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

3

1.     The government is unaware of any information that would tend directly to negate the defendants' guilt concerning any count in the indictment. However, you should be aware that one of the witnesses in this case at first told law enforcement authorities that defendant ALVIN REEVES was not the mastermind or leader of the bank fraud in which that witness was involved. Instead, the witness claimed that the witness was directed to commit the fraud by Dwayne Thomas. Before testifying before the grand jury in this matter, the witness informed the government that it was ALVIN REEVES, and not Dwayne Thomas, who instructed him to commit the bank fraud and who provided the necessary documents to do so. Moreover, the witness stated that he had previously lied to the government because he had been instructed to do so by defendants ALVIN REEVES and ALVENIA REEVES.

Moreover, you should be aware that a fingerprint analysis of three checks stolen from Standish Village Nursing Home and cashed in this matter were tested for fingerprints. No fingerprints matching either defendant was found on any of these three checks. A copy of the fingerprint report is available for your review.

2.     The government is unaware of any information that would cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief and that could be subject to a motion to suppress or exclude.

3.     The following promises, rewards, or inducements have been given to a witness whom the government anticipates calling in its case-in-chief:

Two witnesses were promised that in return for their cooperation the federal government would refrain from taking over their pending state court cases. One of these witnesses was also promised that the attorney for the Commonwealth would inform the judge in the Commonwealth prosecution that this individual was providing assistance to the federal authorities, with the expectation that the judge would then sentence this individual to a shorter sentence in the Commonwealth prosecution. Another individual was promised that in return for this witness' cooperation, the government would agree to charge the witness with violations of 18 U.S.C. § 1344, Bank Fraud, but not with violations of and 18 U.S.C. § 1028A, which would carry a mandatory two year sentence to be imposed on and after the sentence for bank fraud. In addition, this witness is cooperating in the hope that the witness may be eligible for a recommendation of a reduced sentence if his cooperation is truthful and helpful.

4

    Pursuant to Local Rule 116.6, the government declines at
this time to disclose the names of these witnesses due to
concerns for the safety of the witnesses and members of the
witnesses' households.  The government also reserves the right to
call additional witnesses in this case who may also have criminal
records or pending criminal cases, but at this time has not
decided to do so.

    4-5. The government is aware that one of its witnesses has a
criminal record, including arrests for larceny, operating after a
suspended license, compulsory insurance violation, and
threatening all from 2002, and a dismissed affray charge from
2001.

        Another witness in this case has a criminal record
including convictions for uttering and forgery and an arrest for
larceny all from 2002; convictions for shoplifting and possession
of a controlled substance offense from 1988; an arrest for
possession with intent to distribute Class A substances from
1987; a conviction for larceny from 1986; a conviction for
knowingly receiving stolen property from 1985; arrests for
disorderly person and assault and battery from 1984; arrests for
knowingly receiving stolen property from 1982; and an arrest for
disorderly person from 1980.  This witness also has a pending
federal case for bank fraud.  This pending federal bank fraud
case relates to some of the charges in the indictment filed
against ALVIN REEVES.

        Another witness in this case has a criminal record
including convictions for Possession of False Motor Vehicle
Documents, Uttering, and Attempted Larceny from 2004, arrests for
Assault and Battery, Intimidation, Operating after a Suspended
License, Abuse Prevention, Assault with a Dangerous Weapon,
Compulsory Insurance Violation, Threatening, Larceny, True Name
Violation, and Knowingly Receiving Stolen Property from 2000 to
2004; convictions for Knowingly Receiving Stolen Property and
Possession of a Class D Controlled Substance from 2000;
convictions for Mal Destruction of Property and Abuse Prevention
Act from 1999; convictions for Possession of a Class A Controlled
Substance, Possession of a Class D Controlled Substance, and
Larceny from 1994; arrests for Breaking and Entering from 1994;
convictions for Shoplifting, Firearm ID Card, Possession of
Ammunition, and Abuse Prevention Act from 1991; convictions for
Robbery and Shoplifting from 1989; convictions for Knowingly
Receiving Stolen Property, Threatening, and Possession of
Ammunition from 1988; a conviction for Assault and Battery with a
Dangerous Weapon from 1987; arrests for Knowingly Receiving
Stolen Property, Threatening, and Possession of Ammunition from

1987; and arrests for Assault and Battery, assault to kill, and
Assault and Battery with a Dangerous Weapon from 1986.  This
witness has spent several years in jail as a result of these
various convictions.  This witness also has several pending state
cases involving Larceny, Uttering, Knowingly Receiving Stolen
Property, Identity Fraud, Forgery, Fraud and Filing False
Statements and False Written Reports to Obtain a Credit Card.
These pending cases all relate to the some of the incidents
charged in the indictment filed against ALVIN REEVES.

        Another witness in this case has a criminal record
including arrests (but no convictions) for Knowingly receiving
Stolen Property, uttering, and forgery from 1996.  This witness
also has a pending state court case charging Forgery, Larceny,
Uttering and Identification Violation.  The charges in this
pending case relate to the some of the incidents charged in the
indictment filed against ALVIN REEVES.

    Pursuant to Local Rule 116.6, the government declines at
this time to disclose the names of these witnesses due to
concerns for the safety of the witnesses and members of the
witnesses' households.  The government also reserves the right to
call additional witnesses in this case who may also have criminal
records or pending criminal cases, but at this time has not
decided to do so.

    6.    No identification procedure was used in this case.

## H.    Other Matters

    The government is aware of its continuing duty to disclose
newly discovered additional evidence or material that is subject
to discovery or inspection under Local Rules 116.1 and
116.2(B)(1) and Rule 16 of the Federal Rules of Criminal
Procedure.

    The government requests reciprocal discovery pursuant to
Rule 16(b) of the Federal Rules of Criminal Procedure and Local
Rule 116.1(D).

    The government demands, pursuant to Rule 12.1 of the Federal
Rules of Criminal Procedure, written notice of the defendant's
intention to offer a defense of alibi.  The times, dates, and
places at which the alleged offenses were committed is set forth
in the indictment in this case a copy of which you previously
have received.

6

Please call the undersigned Assistant U.S. Attorney at 617-748-3385 if you have any questions.

                                    Very truly yours,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney

                    By:

                                    SETH P. BERMAN
                                    Assistant U.S. Attorney

Enclosures

CC: Magistrate Judge Dein

7

MEMORANDUM OF INTERVIEW

| | | |
|---|---|---|
| PERSON INTERVIEWED | : | Alvin Reeves |
| DATE OF INTERVIEW | : | October 5, 2004 |
| TIME OF INTERVIEW | : | 11:10 AM – 12:00 Noon |
| PLACE OF INTERVIEW | : | Postal Inspectors' Office<br>Boston |
| INTERVIEWED BY | : | Paul K. Durand, Postal Inspector<br>Steven Blair, Detective, Boston Police |

Reeves was interviewed concerning his involvement in a bank fraud ring.

Reeves was arrested at his apartment, 14 Francis Drive, Apt 8, Randolph at 10:40 AM. I advised Reeves of his Miranda at that location and informed him if he wished to discuss the investigation it could be done at my office. Reeves agreed. At my office, I again advised Reeves of his Miranda. He acknowledged and signed.

I told Reeves that based on our investigation he was the ringleader of a bank fraud ring. Reeves repeatedly denied. I informed him that subjects involved had named him and further, identity information of individuals whose bank accounts had been compromised was recovered in his apartment. Reeves wanted to know the names of those identified him. He also expressed doubt the identity information was found in his apartment.

Reeves said he was not the big fish. He explained that because of his previous conviction he was known on the street as a person who had some knowledge in the fraud area and people would come to him for advice. For example, someone might come to him with identity information and Reeves could direct that individual as to where to get a counterfeit ID made. Reeves said that the identity information found in his apartment might have been information these people brought him. He might have crumpled up pieces of papers bearing the information.

Reeves said a lot of dudes are out doing their own thing and he isn't involved. This would include his sister, Venus.

Reeves stated identity information can be obtained from different sources including mortgage officers.

Reeves was shown a photograph of an individual making a transaction on the William Saladin account. Reeves denied it was "Anthony" and identified him as "Joe" or "JoMo," cell 617-438-1811.

Reeves was asked about his use of a cell phone i/n/o Sarah Arens. Reeves admitted using this cell phone knowing it was taken out in a stolen identity. It was a "burnout phone." "Burnout phones" are commonly sold on the street. I told Reeves an associated address with the Arens account was 429 Walnut Ave., Roxbury (Note: said address is the former address of a Reeves' girlfriend, Tiombe Weaver), Reeves said "well, you know who gave me that phone." Reeves also admitted using a cell phone i/n/o John Scott which he bought on the street. He said what you can do is change the billing address to address you have access to in order to pay the bill and keep the phone in service. Reeves said he did this.

Reeves was asked about Dwayne Thomas. Reeves said Thomas came to him and he referred him to his New York City source to obtain counterfeit identification.

Reeves declined to identify the NYC connection.

Asked about Arthur Ford, Reeves said Ford and Thomas were involved in this case.

Reeves was told to inform his relatives, in particular his sisters, Venus and Anita, to not have any contact with potential witnesses against him. Reeves does not control his sisters. He said he heard Anita had words with Dejesus. Dejesus must have said something to set Anita off. He described Dejesus as a habitual liar.


Paul K. Durand
Postal Inspector



U.S. Postal Inspection Service
## WARNING AND WAIVER OF RIGHTS

Place: _14 FRANCIS DRIVE_
_APT 8_

Date: _10-5-2004_     Time: _10:40 AM_

*READ AT APT.*
*A.R. WILL TALK*
*AT OFFICE*

### WARNING

*REREAD AT OFFICE*
*AT 11:00 AM*

## BEFORE YOU ARE ASKED ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.

- You have a right to remain silent.
- Anything you say can be used against you in court.
- You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
- If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
- If you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time. You have the right to stop answering questions at any time until you talk to a lawyer.

I have read this statement of my rights (This statement of my rights has been read to me) and I understand what my rights are.

_10/5/04_          _11:12 AM_          _Alvin Reeves_
(Date)               (Time)                (Signature)

### WAIVER

I am willing to discuss subjects presented and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

_10/5/04_          _11:12 AM_          _Alvin Reeves_
(Date)               (Time)                (Signature)

Witnessed by: _Paul K Duval_
Title: _POSTAL INSPECTOR_
Witnessed by: _____
Title: _BOSTON POLICE DETECTIVE_

IS Form 1067 November 2000

Search Warrant

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
14 FRANCIS DRIVE, APT 8, RANDOLPH, MA AN
APARTMENT LOCATED IN THE TYRONNE GARDENS
APARTMENT COMPLEX WITH A TAN DOOR WITH A
SILVER # 8 ON THE DOOR

**SEARCH WARRANT**

CASE NUMBER:   04m– 1107– J6D

TO:  Paul K. Durand _____ and any Authorized Officer of the United States Affidavit(s)

having been made before me by  Paul K. Durand _____ who has reason to believe that

☐ on the person of or   ☒ on the premises known as (name, description and/or location)

14 FRANCIS DRIVE, APT 8, RANDOLPH, MA AN APARTMENT LOCATED IN THE TYRONNE GARDENS APARTMENT
COMPLEX WITH A TAN DOOR WITH A SILVER # 8 ON THE DOOR

in the District of Massachusetts there is now concealed certain person or property, namely
(describe the person or property)

documents, currency, identification documents in names other than the occupants of the apartment, records of bank transactions,
personal identity information of people other than the occupants of the apartment, telephone records, records or keys for mail drops
and safety deposit boxes, computers, cellular or other wireless telephones, pagers, bank account information of people other than the
occupants of the apartment, and other evidence of identity theft and bank fraud as well as evidence of ownership and control of the
premises

I am satisfied that the affidavit(s) and any record testimony establish probably cause to believe that the person or property
so described is now concealed on the person or premises above-described and establish grounds for the issuance of this
warrant.

YOU ARE HEREBY COMMANDED to search on or before  September 25, 2004 _____

                                                                                         Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and
making the search (in the daytime – 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause
has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and
receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly
return this warrant to  Hon. Judith G. Dein _____ as required by law.

September 15, 2004   11:40 AM          U.S. Judge or Magistrate Judge
Date and Time Issued
JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE          Judith G. Dein
Name and Title of Judicial Officer                 Signature of Judicial Officer

Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
14 FRANCIS DRIVE, APT 8, RANDOLPH, MA AN
APARTMENT LOCATED IN THE TYRONNE GARDENS
APARTMENT COMPLEX WITH A TAN DOOR WITH A
SILVER # 8 ON THE DOOR

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: *O4/m - 1107 - JCD*

I __Paul K. Durand_____ being duly sworn depose and say:

I am a(n) ____United States Postal Inspector_____ and having reason to believe that
Official Title

☐ on the person of or  ☒ on the premises known as (name, description and/or location)

14 FRANCIS DRIVE, APT 8, RANDOLPH, MA AN APARTMENT LOCATED IN THE TYRONNE GARDENS APARTMENT
COMPLEX WITH A TAN DOOR WITH A SILVER # 8 ON THE DOOR

in the District of Massachusetts there is now concealed certain person or property, namely
(describe the person or property)
documents, currency, identification documents in names other than the occupants of the apartment, records of bank transactions,
personal identity information of people other than the occupants of the apartment, telephone records, records or keys for mail drops
and safety deposit boxes, computers, cellular or other wireless telephones, pagers, bank account information of people other than the
occupants of the apartment, and other evidence of identity theft and bank fraud as well as evidence of ownership and control of the
premises

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence, contraband, fruits, and instrumentalities

concerning a violation of Title _18_____ United States code, Section(s) _1028 and 1344_____
The facts to support a finding of Probable cause are as follows:

See attached affidavit of Paul K. Durand

Continued on the attached sheet and made a part hereof. ☒ Yes ☐ No

_Paul K. Durand_
Signature of Affiant

Sworn to before me, and subscribed in my presence
September 15, 2004_____ at
Date

_Boston, Massachusetts_____
City and State

JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

_Judith Gail Dein_
Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF THE SEARCH OF    )
14 FRANCIS DRIVE, APT 8, RANDOLPH, MA    )
AN APARTMENT LOCATED IN THE TYRONNE    )    Magistrate Judge No. *04m-1107-JGD*
GARDENS APARTMENT COMPLEX WITH A    )
TAN DOOR WITH A SILVER # 8 ON THE DOOR    )    **Submitted Under Seal**

## AFFIDAVIT OF UNITED STATES POSTAL INSPECTOR PAUL K. DURAND

I, Paul K. Durand, having been sworn hereby depose and state as follows:

1.    I am a United States Postal Inspector and have been so employed 18 years. My investigative experience includes, but is not limited to: drug interdiction; child pornography; internal postal employee investigations; and financial frauds. I have previously been stationed at Detroit, MI, and Indianapolis, IN. Since October 1999, I have been assigned to the Boston field office to investigate various types of financial crimes, including check and bank fraud, credit card fraud, and identity theft. I have attended numerous check and credit card fraud working group meetings. I have also received training in this area sponsored by the International Association of Financial Crimes Investigators. I have made arrests and executed search warrants in this field.

2.    The undersigned, along with officers of the Massachusetts State Police and Boston Police, as part of the Massachusetts Identity Theft Task Force, is investigating the activities of a ring of individuals involved in a bank fraud/identity theft scheme. The ring "takes over" the bank accounts of legitimate Citizens Bank and Fleet Bank customers and makes withdrawals from these accounts. One of the suspects in this investigation is ALVIN REEVES (DOB: 8/25/1977) of Randolph, MA. Unless otherwise indicated, all of the information contained herein has been obtained directly by me during the course of my investigation, or has been communicated to me by

1

other law enforcement agents assisting me with the investigation.

3.    I am submitting this Affidavit in support of an application for a search warrant for 14 Francis Drive, Apt 8, Randolph, MA. Said address is the residence of Alvin Reeves. I have been to the apartment complex in which 14 Francis Drive is located on many occasions and as recently as September 10, 2004. The apartment complex is called the Tyronne Gardens Apartment Complex. The complex is situated on the east side of North Main Street just south of the intersection of Oak Street in Randolph. The complex consists of multiple buildings. Building #14 is a three story red brick building with a light colored shingle roof. The front door faces west. Above the door is a light red wood plaque that bears in white lettering the numeral "14." Through the front door, up six steps, the first door on the right is the door to Apartment # 8. The door is tan in color. In the middle of the door is a silver doorknocker and the numeral "8," also in silver.

4.    The facts and circumstances of this investigation as set forth below show that there is probable cause to believe that REEVES has committed, is committing, and will continue to commit offenses including Identity Fraud, in violation of Title 18, United States Code, Section 1028 and Bank Fraud, in violation of Title 18, United States Code, Section 1344. There is also probable cause to believe that REEVES stores in the apartment, over which he maintains dominion and control, the instrumentalities and fruits of the criminal enterprise of which he is a part.

5.    Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are sufficient to establish the requisite probable cause

2

for a search warrant.

6.    In November 2002, REEVES was sentenced in U.S. District Court for the District of Massachusetts to 23 months imprisonment, after he pleaded guilty to an indictment charging him with ten counts of identity theft and nine counts of bank fraud, (hereinafter, "the prior conviction"). REEVES was released from custody in November 2003. He is currently serving 36 months of supervised release.

7.    The prior conviction was based on evidence that REEVES had obtained numerous photo identification cards bearing his photographic image alongside the names and social security numbers of other people. REEVES used these false identifications to open instant lines of credit at various retailers and to make fraudulent charges. Moreover, REEVES obtained stolen checks from a variety of sources and arranged for other people (runners) to cash the checks at area banks. REEVES received the bulk of the money made through this fraud, and paid the runners a portion of the proceeds.

8.    On April 27, 2004, I interviewed Anita Dejesus, the mother of REEVES' child. Dejesus reported the following: REEVES currently resides at 14 Francis Drive, Apt. 8, Randoph, MA. Alton Reeves, REEVES' father, rented the apartment so that ALVIN REEVES would have a place to live. Dejesus further reported that REEVES was again involved in identity theft. As of the April 27, 2004 interview, Dejesus recalled being to REEVES' apartment in Tyrone Gardens apartment complex in Randolph on four occasions. The first visit was probably in November 2003. Dejesus reported that REEVES kept scraps of paper with names and identity information of people other than REEVES on them. Dejesus distinctly recalled that during this visit she saw one such scrap with the name "Stephen Flaherty" on it along with what appeared to

3

be a date of birth and a social security number. This piece of paper was located on the dresser in the bedroom of REEVES' apartment. Dejesus showed it to REEVES, who said, "I been looking for this, now I can pay my cable bill." Dejesus also opened the top dresser drawer and saw an estimated 15 to 20 additional slips with names and what appeared to be personal identifying information on them. REEVES slammed the drawer shut. Moreover, Dejesus reported that REEVES had obtained mobile telephone service under the stolen identity of "Sarah Arens."

9.      In May 2004, I spoke with Sarah Arens of Melrose, MA. Arens confirmed that her identity had been stolen and used to open a Sprint PCS mobile telephone account. Arens also reported that the identity had been used to open fraudulent instant credit accounts in her and her husband's (Matthew Arens) names with Sears.

10.     I have obtained copies of the Sprint mobile telephone records. Based on my investigation, I believe that the records provide a linkage to REEVES. The address information provided on the account I know to be the address of REEVES' girlfriend, and also the location where I arrested REEVES in 2001 in connection with the prior conviction. Further, telephone calls made on the account are to individuals I know to be relatives of REEVES.

11.     In the course of this investigation, I have spoken several times with Jeffrey Smith, REEVES' probation officer. Smith told me that REEVES resides at 14 Francis Drive Apt. 8, Randolph, MA. Smith has visited REEVES there, as recently as August 3, 2004. Smith reported that under the terms of his supervised release, REEVES is confined to 14 Francis Drive, Apt. 8, with the exception of travel to jobs in Boston; Boston counseling sessions; and limited personal time.

12.     On July 7, 2004, an individual (hereinafter, "CS #1") was captured in a Citizens'

4

Bank surveillance photo. The photo was of CS #1 at the Citizens' Bank branch located at 1628 Tremont St., Roxbury, MA. CS #1 posed as David Gilmore Jr., a true person, and employed a counterfeit Massachusetts driver's license in Gilmore's name, but with CS #1's photographic image. CS #1 used this counterfeit identification to take over Gilmore's bank account, and withdraw $9,000 from the account. I later learned the true identity of CS #1, and interviewed CS #1 on August 6, 2004 and August 20, 2004.

13.    CS #1 told me that he/she works for REEVES. CS #1 stated that REEVES is running a bank fraud scheme. REEVES has information about other people's bank accounts, and has contacts through which REEVES obtains counterfeit Massachusetts drivers' licenses. CS #1 described his/her work with REEVES as follows: REEVES telephoned CS #1 and advised CS #1 to obtain passport type photographs of CS #1 at a Walgreen's drug store. REEVES met with CS #1 and took possession of the photos. At a later date, REEVES again met with CS #1 and provided CS #1 with the Walgreen's photo image of CS #1, now in a Massachusetts driver's license, but bearing the name and other information of someone other than CS #1. REEVES told CS #1 to pose as the individual whose name appeared on the driver's license, and to conduct bank activity on that person's account. This activity included making withdrawals and/or transferring funds from one account to another. CS #1 gave the funds obtained in this scam to REEVES, who then paid CS #1 for his/her efforts.

14.    CS #1 said he/she had performed this type of activity for REEVES numerous times since early spring of 2004, and as recently as July 29, 2004. CS #1 estimated that during this time period, REEVES drove CS #1 to banks on at least six occasions. CS #1 reported that REEVES waited outside the bank while CS #1 conducted the fraudulent transactions.

15.    The activity in which REEVES is involved, as described by Dejesus and CS #1, is similar to that which led to REEVES' 2002 conviction. Moreover, the investigation has led me and other law enforcement officers and bank investigators involved in this case to believe that REEVES' activities are not limited to the few transactions in which CS #1 was involved. The investigation has revealed apparent linkage between the account compromised by CS #1 and other bank accounts that have also been victimized. For this reason, I believe based on my training and experience, that there are other individuals working with REEVES who are performing the same function as CS #1.

16.    On August 31, 2004, Probation Officer Smith reported to me that REEVES was part of an encounter in Roxbury, MA with the Boston Police on August 24, 2004. During this encounter, REEVES was observed talking with the occupant of a double-parked vehicle. A female occupant of the vehicle was arrested for cocaine possession. REEVES was not arrested as a result of this incident, but $1000 in currency was found on his person.

17.    Probation Officer Smith has told me that REEVES' sole employment is with Optima Shipping of Boston. He earns $8.00 per hour and generally works 20 hours per week. These wages are subject to garnishments for two child support payments.

18.    On September 11, 2004, the Randolph Police arrested REEVES at 14 Francis Drive Apt. 8 for domestic abuse against Arnita Dejesus. Also present in the apartment at the time of the incident was Alvenia Reeves, REEVES' sister, who Dejesus tells me sometimes stays in the apartment with REEVES. The incident had occurred at that location on the same date. On September 13, 2004, I interviewed Dejesus. Dejesus provided the following information: She had gone to 14 Francis Drive, Apt 8 on September 10, 2004. On that date, REEVES gave

6

Dejesus $300 in cash. REEVES took $50 out of his pants pocket, and gave Dejesus $250 from what looked like a hiding spot in the bottom of the living room couch. Dejesus observed REEVES remove more than $250 from this hiding spot, including several $100 bills, which REEVES returned to the couch. While in the apartment, Dejesus also saw 3 or 4 Fleet bank withdrawal slips. Dejesus said the slips indicated withdrawals in the $2,000 to $2,500 range. Dejesus thought this unusual as REEVES had told her he didn't have any bank accounts. Dejesus also recalled that REEVES usually carries a backpack, which he keeps in his car or in the dining room closet in the apartment. A few months back, while in REEVES' apartment, Dejesus saw two credit cards in names other than REEVES' in the backpack. One card was a Chase bank card and the other a blue Continental card. Dejesus thought they were in the first names Charles and David. Later that day, REEVES answered a voice mail message in Dejesus' presence. REEVES told Dejesus that the message was that "the girl who goes into the banks and makes withdrawals" was just sentenced to 3 years. REEVES returned the call in Dejesus' presence. Dejesus didn't know to whom REEVES was talking, but she heard him tell the person on the call that "you can do 3 years" and "not to worry about money."

19.    After this conversation, REEVES and Dejesus argued about his continued involvement in bank activity. REEVES said he had to do what he had to do. Dejesus asked REEVES about getting caught. REEVES advised, "I don't go in the banks."

20.    I know based upon my training and experience, that persons who are engaged in check and bank fraud and credit card theft and identity theft employ numerous documents to advance their criminal activity. These documents include, but are not limited to: checks, credit cards, bank records, bank receipts, forms of identification, written correspondence, notes, and

7

memoranda. These items are commonly found within the personal residence of those involved.

21.    Also based upon my training and experience and participation in other investigations I have learned that individuals involved in this type of criminal enterprise frequently communicate with others to facilitate their goals of obtaining information. Cell phones and computers are commonly used and often recovered in the suspects' domiciles. Remote mail receiving locations such as post office boxes and mail drops are frequently utilized to advance the scheme and records and keys pertaining to the same are usually held in residence.

22.    Training and experience have taught me that practitioners of financial crimes frequently keep large amounts of currency in their residences. Additionally, people involved in these types of crimes often keep in their residences documents or other evidence pertaining to the secreting and concealment of other funds and valuables including wire transfer receipts, bank records, and records and keys to safety deposit boxes and storage locations.

23.    I also know based upon my training and experience, that individuals keep within their residences evidence of occupancy, including but are not limited to utility bills and telephone bills, cancelled envelopes, and other household service records.

24.    Based on the above information, I submit there probable cause to believe that in the residence located at 14 Francis Drive, Apartment 8, Randolph, MA and on the person of anyone found within the aforesaid residence at the time the search warrant is executed there is concealed certain items which constitute evidence and instrumentalities of violations of Title 18, United States Code, Section 1028 and Title 18, United States Code, Section 1344.

Paul K. Durand
Postal Inspector

Sworn to and subscribed
before me this 15th day of September, 2004.

Honorable Judith G. Dein
United States Magistrate Judge

9