UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Crim. No. 04-10311-01-JLT |
| v. | ) ) |  |
| ALVIN REEVES | ) ) |  |

**SENTENCING MEMORANDUM**

Alvin Reeves ("the defendant"), by and through undersigned counsel, hereby submits this memorandum of law to assist the Court in reaching an appropriate disposition in this matter. On August 14, 2006, the defendant appeared before the Court and pleaded guilty to a single indictment charging him with two counts of conspiracy, thirteen counts of bank fraud, six counts of identity theft, seven counts of aggravated identity theft, and two counts of tampering with a witness. On January 12, 2007, the United States Probation Office for the District of Massachusetts ("Probation") submitted a Presentence Investigation Report ("PSR") in accordance with Rule 32 of the Federal Rules of Criminal Procedure. The PSR concluded that the defendant's total offense level in accordance with the advisory United States Sentencing Guidelines was 20 and his criminal history category was IV. A criminal history category of 20 coupled with a criminal history category IV yields an advisory sentencing guideline range of 51 to 63 months in prison. The defendant's plea to aggravated identity theft, however, mandates the imposition of a two-year mandatory minimum sentence that the defendant must serve on and after his otherwise applicable term of imprisonment. See 18 U.S.C. § 1028A.

With the imposition of § 1028A, his advisory guideline range becomes 75 to 87 months in prison. Pursuant to a written plea agreement previously submitted to the Court, the government has agreed to recommend "[a] period of incarceration at the low end of the guideline sentencing range." (Plea Agreement at 5).

The defendant contends that he should receive a sentence of 48 months in prison. The defendant believes that this sentence runs consistent with the factors enumerated in 18 U.S.C. § 3553(a). These factors include the defendant's history and personal characteristics including his drug addiction and manic depressive personality. It also includes the need for treatment and rehabilitation through intensive drug interdiction and psychotherapy. Finally, section 3553(a) allows the Court to consider the fact that the current advisory guidelines punish the exact same conduct multiple times in various ways. These factors favor the imposition of a four-year prison term.

## FACTS AND BACKGROUND

Alvin Reeves is a 29-year-old male who hails from a from a large and impoverished Roxbury family. Born on August 25, 1977, the defendant was the youngest of eleven children in the Reeves family. Unlike many children reared in the mean streets of Roxbury and Dorchester, the defendant lived in a two-parent home with a number of siblings to provide him with support. The defendant likens his family to the Brady Bunch. Unlike the upper middle-class fictional Brady family, however, the Reeves family existed in relative squalor. They subsisted on Welfare. Never lacking in basic necessities, the defendant nonetheless was a product of an era where a weekly government check provided his family's only protection against abject poverty and homelessness.

The defendant spent his childhood in subsidized housing in Roxbury. During high school, the defendant's family relocated to subsidized housing in Dorchester. The defendant attended high school in Boston and graduated from the John D. O'Bryant High School in 1995. Two years later, he enrolled at Johnson & Wales University in Providence, Rhode Island after earning a basketball scholarship. Standing at six feet and four inches, the defendant received basketball scholarships from Wentworth Institute of Technology in Boston, the University of Massachusetts at Boston, and Endicott College in Beverly, Massachusetts. The defendant chose Johnson & Wales where he pursued a degree in advertising and public relations.

Living amid the denizens of the relatively wealthy East Side of Providence represented a major departure from the subsidized housing projects of Dorchester and Roxbury. Here, the defendant sampled money and its trappings for the first time in his life. Ironically, considering his childhood exposure to the street, he also sampled drugs for the first time. First, he used cocaine as a recreational drug. Then, he developed an addiction. He purchased several bags of cocaine a day. He combined his cocaine with alcohol in order to control his moods. Eventually, he supplemented the cocaine with ecstasy. His drug addiction led to very low grades (a 1.75 GPA) and problems with the police.

Johnson & Wales suspended the defendant. He lost his basketball scholarship and his only financial means of attending college. Three years into his degree program, the defendant withdrew for financial reasons. He never returned to Johnson & Wales or to any other college. He did, however, return to drugs.

Increasing his narcotic usage, the defendant spent thousands of dollars on cocaine and, to a lesser extent, ecstasy. Feeding his habit meant finding a means to make thousand dollar payments to various New England drug suppliers. Rather than sell narcotics himself, the defendant instead turned to defrauding banks. Committing bank fraud allowed the defendant to support a lavish lifestyle replete with multiple fiancées, fast and expensive cars, and copious quantities of cocaine. Using 40 bags of cocaine a week at a cost of one thousand dollars, the defendant spun into a manic depressive state modulated only by alcohol. He increasingly distanced himself from his family and developed a suicidal ideation.

As his drug use intensified and his ability to control his life diminished, the United States Postal Service discovered the defendant's bank fraud crimes. He pleaded guilty in this Court, and United States District Judge Robert E. Keeton imposed a pre-<u>Booker</u> guideline range sentence of 21 months imprisonment. Awaiting sentencing on pretrial release before Judge Keeton, the defendant reports that he had several "dirty" urines.

The defendant received <u>no</u> drug treatment in prison. He benefited from no educational programs. He received no vocational training. He learned no skills, and he received no psychotherapy or mental health treatment. His stint in federal custody was nothing more than "dead time."

Released briefly into a halfway house and then onto the streets, the defendant returned to the Boston area. He also returned to drugs. Snorting cocaine, the defendant fell back into familiar patterns. These patterns, however, required money. Lacking a college degree or vocational training or special skills combined with a federal prison record, the defendant believed his prospects for meaningful employment were dim.

Needing money, the defendant quickly relapsed into a time tested method of acquiring large sums of cash. Operating with various runners, the defendant once again committed several acts of bank fraud. The United States Postal Service, however, once again uncovered his plans. Placed on home confinement for more than three years as he awaited a disposition in this case, the defendant continued to test positive for cocaine. At his supervised release revocation hearing before United States District Judge George O'Toole on September 19, 2006, the Court, after imposing a twenty-one month prison sentence, ordered the defendant into immediate custody based in part upon his repeated cocaine use violations.

Prior to his incessant cocaine use, family and friends described the defendant as a "wonderful person" with an infectious sense of humor and a positive disposition. They report that when not using drugs, he is an "excellent" father to his children. During periods of drug use, however, he is remote, detached, and irritable modulating moods that often swing violently from euphoria to suicidal ideation.

## ARGUMENT

A. <u>Sentencing Guideline Issues</u>

The PSR concludes that the defendant's advisory sentencing guideline range was 75 to 87 months in prison based upon a total offense level of 20, a criminal history category of IV, and the imposition of 18 U.S.C. § 1028A. Although the defendant does not dispute the determination of the criminal history category or the application of 18 U.S.C. § 1028A, he believes that the correct total offense is either 17 or 18. A total offense level of 17 or 18 combined with a criminal history category of IV and the application of § 1028A yields an advisory sentencing guideline range of 61 to 75 months in prison.

In arriving at a total offense level of 17 or 18, the defendant disputes a two-level increase to his offense level based upon the amount of actual and attempted loss. The defendant believes that the Court should not treat attempted loss in the same manner that it regards actual loss. Punishing him for attempted loss in the same manner as actual loss works an injustice on him. In particular, the sentencing guidelines direct courts to discount money returned prior to the detection of a crime. See USSG § 2B1.1 (Application Note 3(D)). Hence, had the defendant returned a portion of his actual loss prior to the detection of this offense, it would not count against him in the guideline analysis. By definition, however, the defendant cannot return money from an attempted offense. Finding him responsible for the attempt, therefore, actually has the potential to inflict a harsher punishment for an attempt than a completed crime. As a hypothetical, if one defendant stole $100,000 and returned $90,000 of the money prior to detection of offense, he would bear responsibility for $10,000 worth of stolen money under the guidelines. If, however, another defendant attempted to steal $75,000, that defendant would bear a greater responsibility under the guidelines than the defendant who actually completed the offense because he would have no opportunity to repatriate the money he attempted to gain from the criminal activity. Punishing him with the same degree of severity for an attempt crime produces an unjust and perverse result. The defendant maintains, therefore, that he should bear responsibility for $115,315.00.

The defendants second challenge to the guideline determination found in the PSR. Specifically, with regard to the enhancement for obstruction of justice under USSG § 3C1.1, the defendant believes that he should not receive a two-level enhancement for his role in the witness tampering offense. Although the defendant pleaded guilty and

accepted responsibility for the witness tampering offenses, he maintains that he played a minor role in that offense. Although the defendant admits that he conspired with his co-defendant to blame the bank fraud scheme on another individual, he expressly denies that he "contacted one of the runners, and instructed the runner to inform the investigators that DT, and not [the defendant], was the leader of the bank fraud ring." (PSR at 9). The PSR fails to note that the runner involved informed the government that Mr. Reeves sent her a letter asking her to implicate another individual. The runner, however, could not produce this alleged letter. The defendant maintains that the runner could not produce the letter because it never existed. Mr. Reeves denies that he ever contacted the runner. His involvement in this offense was limited and indirect. The Court may consider the defendant's role in this offense under USSG § 3B1.2 and award him less than a two-level enhancement pursuant to 18 U.S.C. § 3553(a).

B. Section 3553(a) Factors

The defendant asks the Court to impose a sentence of 48 months in prison after considering the defendant's history and characteristics, the advisory guideline range, the defendant's prospect for rehabilitation, the goal of receiving substance abuse treatment and mental health counseling, and the benefits of additional education and/or vocational training. In seeking this sentence, the defendant notes that the United States Sentencing Guidelines as promulgated by the United States Sentencing Commission no longer bind the federal courts. United States v. Booker, 543 U.S. 220, 259 (2005). Indeed, the United States Supreme Court's landmark Booker decision declared the mandatory provisions of the United States Sentencing Guidelines unconstitutional. Id. Booker,

7

however, reaffirmed a sentencing court's duty to sentence a defendant in accordance with those provisions of the Sentencing Reform Act specified in 18 U.S.C. § 3553(a).

The § 3553(a) factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, to afford adequate deterrence, to protect the public, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victim of the offense. United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). The district court, while not bound by the guidelines, still must consult and consider them when imposing sentence. Booker, 543 U.S. at 264. Courts of appeals cannot disturb a district court's sentence unless the appellate court finds that sentence unreasonable. See id.

Here, the § 3553(a) factors as a whole favor a sentence of 48 months. The defendant is a product of an impoverished environment who experienced wealth for the first time in college. He also experienced drugs for the first time in college. The combination led to a life punctuated by substance abuse. Soon after his cocaine habit began, the defendant lost everything. He lost his basketball scholarship. He lost his opportunity to obtain a college degree. He lost his ability to control his life.

Desiring cocaine and the trappings of that lifestyle, the defendant fed his habit by defrauding banks. Increasingly plagued by depression and despair with occasional

thoughts of suicide, the defendant felt helpless to escape the depths of his dependency on cocaine. Even when imprisoned in 2002 for the bank fraud crimes, the cycle never ended. He never participated in the drug treatment program in prison. He never received any mental health counseling. Given the absence of treatment and education coupled with poor job prospects and a festering cocaine problem, the defendant's prospect for recidivism appeared highly probable.

Caught within the addictive world of cocaine, the prospect of a successful extrication is scant unless he receives help. People who know the defendant view him as a wonderful person and father when not influenced by drugs. These people see a motivation to change and correct his mistakes. They also see remorse. With proper drug treatment and mental health counseling, the defendant believes he can change his life and someday make a positive contribution to society. The defendant asks the Court to consider not only his drug dependency but his opportunity for rehabilitation once he receives proper treatment.[1] Accepting full responsibility for his actions, the defendant recognizes that the Court has to punish recidivism. The defendant asks the Court, however, not to impose a sentence so severe that it discounts his personal struggles.

The advisory sentencing guidelines, examined as a factor in the § 3553(a) analysis, are emblematic of overly harsh punishment in this case. Specifically, in this instance, the

---

[1] Psychiatrist Roger Gray, M.D., furnished a report that further addresses the history and contours of the defendant's addiction. See Report of Dr. Roger Gray, attached as Exhibit A. Dr. Gray has informed defense counsel that new medications exist – medications not part of the standard protocol during the defendant's last period of incarceration – that erase the addictive properties of drugs like cocaine. Dr. Gray indicated that he believes that with intensive drug therapy treatment, the defendant will readily defeat his addiction and return to society a changed person. Dr. Gray, who has testified before the Court on other matters and who plans to attend the scheduled sentencing hearing in this matter, is available to provide live testimony if the Court believes it will help clarify any of the issues involving the defendant's drug dependency and mental health.

guidelines repeatedly punish the defendant for the same conduct. His base offense level of 17 to 20 combined with a possible criminal history category of IV or V will yield a low end guideline range sentence of 37 to 63 months in prison <u>before</u> this Court imposes a two-year minimum mandatory consecutive sentence for aggravated bank fraud pursuant to 18 U.S.C. § 1028A, and he faces an additional consecutive sentence for committing a crime while on pretrial release. Furthermore, the fact that the defendant committed the crimes to which he recently pleaded guilty while on supervised release and less than two years after release from imprisonment result in a significant enhancement of the defendant's criminal history category compelling a finding of category IV, which, in turn, drastically increases his recommended guideline range sentence. These enhancements do not punish separate conduct. Instead, they increase his base offense level or criminal history based upon his status at the time of the commission of the offense. This Court should endeavor not to punish the defendant multiple times for engaging in the same act. A sentence of 48 months, therefore, is more than sufficient time to punish the defendant, promote deterrence and respect for the law and fulfill needed educational or rehabilitative goals. Consistent with the principles outline in 18 U.S.C. § 3553(a), which consider the circumstances and history of this defendant, a sentence of 48 months is a just punishment. It neither over punishes nor under punishes in accordance with the circumstances of this case. The defendant would, therefore, ask the Court to impose it.[2]

---

[2] On September 19, 2006, the Court (O'Toole, J.) imposed a sentence of 21 months imprisonment following the defendant's admission that he violated the terms of his supervised release when he incurred these offenses. The Court has discretion to run the supervised release sentence consecutive to, concurrent with, or partially concurrent with the sentence it imposes for the instant convictions. Given the multiple punishments for the same conduct that the guidelines liberally permit in this instance – including a criminal history enhancement because the defendant committed the crime while on

## **CONCLUSION**

For the foregoing reasons, the defendant respectfully requests that the Court impose a sentence of 48 months of incarceration. The defendant also asks the Court to recommend his placement in the United States Bureau of Prison's drug treatment program.

Dated: February 9, 2007

                                            Respectfully submitted,
                                            ALVIN REEVES
                                            By his attorneys,

                                            `/s/ Gary G. Pelletier`
                                            _____
                                            Gary G. Pelletier, BBO#631732
                                            Tracy L. Bulger, BBO#642364
                                            DENNER & PELLEGRINO, LLP
                                            Four Longfellow Place, 35th Floor
                                            Boston, MA 02114
                                            (617) 227-2800

---

supervised release – a consecutive sentence for a violation of supervised release would promote an even more duplicative punishment scheme. The defendant, therefore, requests that the Court impose a concurrent sentence.