Roger H. Gray, M.D.
1193 Walnut Street, Suite 7
Newton, Massachusetts 02461
(617) 965-2713

February 7, 2007

Psychiatric Forensic Evaluation
Re: Alvin Reeves
D.O.B. 08/25/77

Overview:
I have been asked by Attorneys Jeffrey A. Denner and Gary Pelletier, who represent Mr. Reeves, whether, to a reasonable degree of medical/psychiatric certainty, he suffers with substance abuse/mental health problems which should be treated as part of his further incarceration.

My opinion is based on two interviews for a total of about five hours on November 3rd and 6th of 2006, a half-hour telephone interview with Ms. Tiombe Weaver with whom Mr. Reeves has two children, ages 2 and 9 years old. All interviews began with clarification that information they provided was voluntary and would not be confidential. I also indicated that I was not his treating psychiatrist. I reviewed the presentence report prepared by Mr. Sean P. Buckley, U.S. Probation Officer and have discussed my findings with Mr. Reeves' attorneys.

The following is a summary of Mr. Reeves' history:
Mr. Reeves is a 29 year old African-American male who is currently incarcerated at the Plymouth House of Correction for violation of probation and is awaiting sentencing. Mr. Reeves is the youngest of 11 children. He grew up in the Boston area, graduated high school, and attended Johnson & Wales College for 2 years where he played varsity basketball. He had been offered basketball scholarships to Wentworth Institute, Endicott College, and Boston State College.

Mr. Reeves reports that he comes from a warm, supportive family. Ms. Tiombe Weaver, who has known Mr. Reeves and his family for over 11 years, confirms this and says "His family is like the Brady Bunch. It's the house everyone goes to." Both Mr. Reeves and Ms. Weaver told me that there was a strong emphasis on positive moral and ethical behavior. Substance abuse was not part of the family culture. Six of the Reeves children went to college.

Ms. Weaver indicated that Mr. Reeves was "an excellent father." She noted a marked change in his demeanor, affect, and functioning several years ago, coincident with the time he reports changes in his coping abilities, mood, and increased severity of abusing various substances including alcohol, cocaine, and ecstasy. She often asked him "What's going on? This isn't you."

College marked the beginning of substance abuse by Mr. Reeves when he was about 19 years old. About 2 years later, he began snorting cocaine. Around the same time he first used ecstasy. He was suspended from college. During this time, his behavior changed. He reports, and she confirms, that he hid his substance abuse from his family and from her. Mr. Reeves told me that he felt overwhelmed with shame and felt unable to confide his problems to anyone and did not seek treatment. He also indicated that he enjoyed the euphoria and energy accompanying substance abuse. He was using about 40 bags of cocaine a week, and he used about 4 out of 7 days at a cost of about $1,000 a week. He reports that he learned to use alcohol in conjunction with cocaine to balance his mood fluctuations. He gradually became more irritable, angry, and isolated from his family.

Mr. Reeves was incarcerated from May of 2002 until November of 2003 when he was released from a halfway house. He reports that he relapsed shortly thereafter, and he was found to have a urine toxic screen positive for cocaine in December of 2003. He subsequently had about 7 "dirty urines". He underwent drug counseling with his probation officer in the summer of 2004. He struggled with sobriety, but he relapsed. He recognized that he was severely addicted and asked to be on the most frequent toxic screening possible (color code red) to help him regain self-control. He acknowledged to himself that substances were ruining his life; however, he felt so ashamed that he had a hard time talking about his addiction. Mr. Reeves minimized symptoms, but Ms. Weaver told me that she observed that he stopped eating, lost weight, had severe sleep problems, was not able "to do anything," and at times conveyed a sense of hopelessness. She became quite concerned that he was suicidal. He never openly reported suicidal ideation though implied it to her. Ms. Weaver observed marked mood swings. He called her late one night this past year and said "I don't know what's going to happen to me...I'm going crazy...just pray for me." Ms. Weaver said to me "I wish I was there to support him. Everyone is so shocked. I hope he gets some help. I hope he'll be a changed man. Mentally and emotionally he's not the same man [that he was prior to substance abuse.]"

Over the course of meeting with Mr. Reeves for 5 hours, he described the evolution of his substance abuse. As noted, this began in college and significantly impaired his ability to function though he continued to be energetic and overtly upbeat. During this time, he engaged in grandiose behavior that was both legal and illegal. Gradually, his mood became irritable and angry. His substance abuse behaviors changed. Whereas he had usually abused substances in the company of others, more recently he began to abuse cocaine by himself. He felt increasingly depressed last summer. His sleep and appetite were poor. He denied thinking about suicide, but he was very upset because he was unable to stop using/abusing substances. Mr. Reeves said "I didn't not care, but I couldn't stop. I tried to get around the urine testing. I never got help. When I came out of prison, I couldn't drink the same. Alcohol was a downer. Coke balanced me. I used coke to balance me." He described the connections between different moods, substances, and environmental problems which have combined to sustain his substance abuse. He acknowledges that he still dreams of using substances, but he denies craving.

Page 2

Mr. Reeves told me that in May, 2006 he asked Chris Wiley, his Pre-Trial Officer, for drug rehabilitation treatment and also wrote a letter to the Court requesting a drug rehabilitation program. He said to me "If I don't get under control now, there may not be another chance...I've got my kids, my mother...I know I can't drink anymore...alcohol leads to coke....I don't want to put my baby through this. My people can't believe that I have a problem." "When I was in a program – Habit Management – in 2004, it helped me." He expressed remorse for his illegal behaviors, substance abuse, hurting his children, parents, siblings, and Ms. Weaver.

Mental Status Examination:

Mr. Reeves arrived at both interviews in standard institutional garb. He was fully cooperative, alert, and oriented to person, place, and time. Speech was coherent, logical, and goal directed. He discussed the history previously noted. He described his mood as sad, but also hopeful about regaining control of his life and becoming a good father. Affect was mood congruent. He denied thoughts of harming others or himself, though acknowledged that at times he has had passive wishes to be dead. He denied hallucinations of any type, and there was no other evidence of psychosis. Cognition was intact. Recent and remote memory functioning was intact.

Discussion:

Mr. Reeves' history strongly indicates a lengthy history of polysubstance abuse and addiction and mood disorder. There is evidence of untreated depression, hypomanic behavior and thinking, and impaired judgment. Mr. Reeves presents as genuinely remorseful about his behaviors and genuinely motivated to change his life. These impressions are significantly supported by Ms. Weaver. The question of malingering was addressed both directly and indirectly in this evaluation. Although there is obvious potential benefit via sentence reduction if Mr. Reeves is referred to a drug rehabilitation program while incarcerated, I do not find evidence of malingering. If anything, I am struck by the degree to which he minimized symptoms of depression and mood lability which one would expect to be inflated in cases of malingering.

Diagnoses:
Axis I:
    Polysubstance Abuse
    Major Depressive Disorder
    R/O Bipolar II Disorder

Conclusion:

In my opinion, to a reasonable degree of medical/psychiatric certainty, Mr. Reeves suffers with a significant substance abuse disorder as well as mood disorder. He is motivated for treatment. There is profound potential benefit to him, his family, and society if he can succeed in treatment for these life-destroying illnesses. I strongly recommend drug rehabilitation and psychiatric treatment during the course of further incarceration.

Respectfully submitted under the pains and penalties of perjury.

Roger H. Gray, M.D.