<pre>
 1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2
        * * * * * * * * * * * * * * *
 3      UNITED STATES OF AMERICA      *
                                      *
 4              vs.                   *      CRIMINAL ACTION
                                      *      No. 04-10311
 5      ALVIN REEVES and             *
        ALVENIA REEVES               *
 6                                    *
        * * * * * * * * * * * * * * *
 7
                  BEFORE THE HONORABLE JOSEPH L. TAURO
 8                   UNITED STATES DISTRICT JUDGE
                            DISPOSITION
 9
        A P P E A R A N C E S
10
                OFFICE OF THE UNITED STATES ATTORNEY
11              1 Courthouse Way, Suite 9200
                Boston, Massachusetts 02210
12              for the United States
                By:  Seth P. Berman, AUSA
13

14              DENNER PELLEGRINO LLP
                Four Longfellow Place, Suite 3501
15              Boston, Massachusetts 02114
                for the defendant Alvin Reeves
16              By:  Gary G. Pelletier, Esq.

17

18

19                                    Courtroom No. 20
                                      John J. Moakley Courthouse
20                                    1 Courthouse Way
                                      Boston, Massachusetts 02210
21                                    February 12, 2007
                                      10:25 a.m.
22

23

24

25
</pre>

1    **APPEARANCES, CONTINUED**

2

3

4

5            GEORGE F. GORMLEY, PC
             755 East Broadway, 3rd Floor
             South Boston, Massachusetts 02127
6            for the defendant Alvenia Reeves
             By: George F. Gormley, Esq.
7

8

9

10

11

12

13

14

15

16

17

18

19

20            CAROL LYNN SCOTT, CSR, RMR
              Official Court Reporter
21         One Courthouse Way, Suite 7204
             Boston, Massachusetts 02210
22               (617) 330-1377

23

24

25

1  **P R O C E E D I N G S**

2  **THE CLERK:**  This is criminal matter No. 04-10311,

3  the United States of America versus Alvin Reeves and Alvenia

4  Reeves.

5  Counsel please identify themselves for the record.

6  **MR. BERMAN:**  Seth Berman for the United States

7  along with Adam Bookbinder.

8  **THE COURT:**  Okay.

9  **MR. PELLETIER:**  Gary Pelletier for Alvin Reeves

10  along with Tracy Bulger.

11  **MR. GORMLEY:**  Good morning, Your Honor.  George

12  Gormley for Alvenia Reeves.

13  **THE COURT:**  Okay.  We are here for disposition.

14  Why don't we take her first.

15  **MR. BERMAN:**  Your Honor, Alvenia Reeves, as you may

16  be aware, was one of obviously two people involved,

17  prosecuted here -- one of three people actually prosecuted

18  here.  Alvin Reeves, her brother, was the ring leader of

19  this ring.  Alvenia was involved in two ways.

20  The first is that she assisted her brother by

21  communicating with some of the runners.  This is a bank

22  fraud case in which the defendants engaged runners,

23  individuals who would go into banks, act as other

24  individuals or, in other words, using identity theft, they

25  would walk into a bank and withdraw money from other

1    individual's bank accounts using false identification.  Or

2    in some cases they obtained fraudulent checks and cashed

3    those checks to obtain the money from the bank, obviously

4    without the bank's permission.

5        What Alvenia did is that first acting at her

6    brother's instruction she went, contacted some of the

7    runners, drove the runners to the banks and collected the

8    money from the runners while the runners -- waited outside

9    the bank and collected the money from them.

10        **THE COURT:**  How many times did she do that?

11        **MR. BERMAN:**  She did it at least for -- well, let's

12    see.  There is one runner she took to the bank on at least

13    one and probably more occasions.  In addition to that, there

14    was another runner who we don't know whether she ever took

15    that person --

16        **THE COURT:**  What would your case be, in other

17    words, if it went to trial?

18        **MR. BERMAN:**  If it had gone to trial, one of the

19    runners would have testified, this is somebody by the name

20    of Billy Chapman.  Billy Chapman would have testified that

21    Alvenia communicated with her about it, took Billy Chapman

22    to the bank and collected money on at least one and possibly

23    two occasions.

24        In addition to that, one of the other runners Barry

25    Dent Smith would testify that while he communicated directly

1    with Alvin about the crime, the substantive crime that is,

2    that he also cashed checks which came from Standish Village

3    Nursing Home.  They were stolen checks and that is the place

4    where Alvenia worked.

5        And the evidence would be that she was the one who

6    stole those checks.

7        **THE COURT:**  Do you have any evidence that she did?

8        **MR. BERMAN:**  Well, the fact that they came from

9    there and that she had access to them.  That they went

10   missing after -- someone from the nursing home would have

11   said that she had access to the spot and the checks went

12   missing after she was known to have been there.

13       In addition to that, Your Honor --

14       **THE COURT:**  It might be a close case for a directed

15   verdict; right?

16       **MR. BERMAN:**  Perhaps on that point, although

17   certainly not on the rest of it, given that the other --

18       **THE COURT:**  Well, all right, except that I want to

19   get a picture of this thing.

20       **MR. BERMAN:**  Okay.  And then the other thing is

21   after Alvin was initially arrested in this case, he was in

22   prison for a few days and he and his sister had numerous

23   telephone conversations in which they attempted to ascertain

24   who was, in their words, the "snitch" who had told on them.

25       They eventually decided during the course of these

1    calls that the snitch was someone by the name of Dwayne

2    Thomas.  Dwayne Thomas is, in fact, someone who ultimately

3    was working for the government, although I don't think at

4    the time that the defendants thought so.

5         But Alvenia then went and contacted two of the

6    runners who would have testified, Billy Chapman again and

7    Barry Dent Smith, and instructed them that they should go to

8    the police and tell the police that it was Alvin Reeves and

9    not -- I mean, excuse me, it was Dwayne Thomas and not Alvin

10   Reeves who was the leader of the bank fraud ring.

11        Billy Chapman didn't do so although Barry Dent

12   Smith initially did.  And he came in, recorded that and was

13   actually scheduled to go to the grand jury and testify to

14   that effect which almost certainly would have resulted in

15   Dwayne Thomas being indicted as a co-leader of the bank

16   fraud ring.

17        Only literally on the door of the grand jury did

18   Barry Dent Smith decide that he didn't want to tell that

19   story under oath and recanted on the story and informed us

20   that, in fact, it was Alvin Reeves who had sent him in and

21   that Alvenia is the one who had told him that Alvin wanted

22   him to say that it was Dwayne Thomas and not Alvin.

23        Billy Chapman would also have testified that

24   Alvin -- well, that gets into Alvin.  I'll hold off on that

25   for now.

1          So essentially, Your Honor, that's what the

2    testimony would have been at trial.  Alvenia was involved in

3    a portion of the substantive crime by assisting runners and

4    I think by inference by stealing some of these checks.  And

5    then she was very involved in the attempted cover-up of the

6    crime as she pled guilty to the obstruction of justice by

7    attempting to mislead the government.

8          **THE COURT:**  So where are we on the guideline

9    recommendation?

10         **MR. BERMAN:**  Her guideline range is, I believe it's

11   27 months to 33 months.  The government would recommend a

12   sentence of 27 months.  This is -- obviously you will see in

13   a moment the sentence that her brother is looking at which

14   is appropriate in this case.  And given the seriousness

15   particularly of the obstruction of justice, I think it's a

16   very appropriate sentence.

17         **THE COURT:**  Now, I read the submission by

18   Mr. Gormley.  If I remember correctly, he is asking for home

19   confinement.

20         **MR. GORMLEY:**  That's correct, Your Honor, I am.

21         **THE COURT:**  So what is your position on that?

22         **MR. BERMAN:**  Are you asking me?

23         **THE COURT:**  You.  I know his position.  He is

24   recommending it.

25         **MR. BERMAN:**  Fair enough.

1          My position, Your Honor, is that a sentence of home

2     confinement is inappropriate in this case given the blatant

3     obstruction of justice and one that almost succeeded and

4     almost led to the wrong person being indicted for this

5     crime -- an additional person being indicted for this crime

6     is something that has to be taken very seriously by the

7     Court.

8          And it's not just that she played, you know, a

9     relatively small role in the crime, though one I think that

10    ultimately led to directing individuals to commit the crime

11    so it's not -- I don't think it is a minor role in the sense

12    in which the guidelines use that.  It's only relative to

13    what her brother did.

14         But certainly for the obstruction her role was

15    quite central.  It was -- she was the one who directed most

16    of the obstruction.  And for that reason I think the Court

17    should take it very seriously and a sentence of imprisonment

18    is an appropriate sentence.

19         **THE COURT:**  She argues that she wasn't a leader.

20    She didn't organize.  She didn't play a supervisory role.

21    She was a gofer essentially.

22         **MR. BERMAN:**  Yes, Your Honor.

23         **THE COURT:**  And the way I describe it --

24         **MR. BERMAN:**  Well I think.

25         **THE COURT:**  -- it seems to me that she comes in

1   that category.  So she says her total offense level should

2   be twelve and so the guideline range with her ought to be 12

3   to 18 months.

4        MR. BERMAN:  Right.  And I don't agree with that

5   interpretation.

6        THE COURT:  You what?

7        MR. BERMAN:  And let me explain why.

8        THE COURT:  You don't agree or you --

9        MR. BERMAN:  I do not agree.

10       I agree that she is much less responsible for the

11  substantive crime than her brother is.  So in that sense,

12  yes, she played a lesser role.  But she's more responsible

13  for the runners because she directed some of them, drove

14  them.  And for that reason I think that a role adjustment is

15  appropriate for her.

16       I certainly do not think that a downward role

17  adjustment is appropriate given the fact she directed other

18  people involved in it.  That's how there is this --

19       THE COURT:  She gave them a ride.

20       MR. BERMAN:  I'm sorry?

21       THE COURT:  According to the testimony, the

22  evidence is she gave them a ride.  She wasn't responsible

23  for them.  I mean, the runners actually had a bigger role to

24  play than she did.  She just drove them there where they

25  went and had to do the difficult work of trying to

1   effectuate the transaction.

2           **MR. BERMAN:**  Well, I think she did more than give

3   them a ride, Your Honor.  Maybe I didn't describe it clearly

4   enough.

5           I think she also gave the runners the information

6   they needed to commit the crime and collected money from the

7   runners when it was over.

8           So, yes, she and her brother sent other people with

9   greater risk of getting arrested into the bank but I am not

10  sure that means that the runners did all the work.  The

11  runners were doing it at their -- the direction of Alvin

12  and --

13          **THE COURT:**  There is no evidence that she set

14  anything up, that she organized it, that she decided who

15  went where and when?

16          **MR. BERMAN:**  That is correct, Your Honor.  There is

17  no evidence of that, other than that she took the people to

18  the banks and gave them the stuff they needed to do and

19  communicated the directions from her brother presumably to

20  the runners about what was going on.

21          **THE COURT:**  Mr. Gormley, what do you want to say?

22          **MR. GORMLEY:**  I think Your Honor has the sense of

23  it.  Ms. Reeves in this rather modestly sized operation was

24  a gofer.  And there is a reason for that, there is a

25  familial -- these two defendants are brother and sister.

1    And so I think that is -- I think Your Honor's sense of this

2    matter is correct.

3            And as to the -- I would, because there was some

4    time spent on it by the lawyer for the -- by Mr. Berman,

5    that as to this obstruction of justice, Judge, as is seen

6    from the evidence and from my remarks that Mr. Dwayne Thomas

7    and Ms. Reeves were involved some time ago in a personal

8    relationship.  A son was born of that relationship.

9            The relationship ended badly.  And as of the time

10   of that this matter was occurring and from the time of the

11   ending of the relationship, Judge, I think it's fair to say

12   that if Ms. Reeves could have gotten Mr. Thomas in any

13   difficulty in the world, her hate, which was reciprocated,

14   was sufficiently great that she would have done it.

15           So, I mean, I don't quarrel with what was done.

16   It's just sort of the conclusion that the government asks

17   the Court to draw that this was a calculated or even a

18   misguided obstruction of justice.

19           **THE COURT:**  So you are asking that the three points

20   not be added.

21           **MR. GORMLEY:**  That's correct, Judge.

22           **THE COURT:**  What does that do?  Does that make it

23   twelve to -- if I agree with him and I don't add the three

24   points.

25           **THE PROBATION OFFICER:**  I think the defense is also

1    arguing the loss is different.

2          **THE COURT:**  Yes.  That is another thing.  But what

3    about the three points?

4          **THE PROBATION OFFICER:**  If you don't add the three

5    points for role, it would be 17 with the obstruction of

6    justice.

7          **THE COURT:**  Seventeen to?

8          **THE PROBATION OFFICER:**  Oh, the guideline range

9    for?

10         **THE COURT:**  Yes.

11         **THE PROBATION OFFICER:**  I'm sorry.

12         **THE COURT:**  I didn't make myself clear.

13         **THE PROBATION OFFICER:**  24 months to 30 months.

14         **THE COURT:**  Then how does he say twelve?

15         **THE PROBATION OFFICER:**  That is the loss, because

16   he thinks the loss is also lower.

17         **THE COURT:**  And talk about the loss.  Why should

18   the loss be lower?

19         **MR. GORMLEY:**  Judge, Ms. Reeves has pled guilty to

20   Counts 3, 5 and 6 here.  And those involve actual

21   withdrawals of 18,000, 4,000, 8,000 and attempted withdrawal

22   as part of that -- as part of Count 1 of $15,000.  And then

23   there is another $12,000, which is in count -- well, which

24   is part of the conspiracy.

25         And so just adding up what she did, we get, total

1    the numbers at $57,000, Judge.  Those are the matters that

2    she was involved in.  And that's where we get to the

3    $57,000.

4         The government is, I think the difference between

5    the numbers are that they're attributing sums to her based

6    on her driving these people to the bank or one thing or

7    another when there is no evidence that, there is no evidence

8    other than doing that that she was involved in.

9         So that -- involved in getting the proceeds or

10   sharing in the gain.  She has pled guilty to the counts in

11   which there were -- and those are the actual withdrawal

12   figures:  $18,000, $4,000, $8,000.

13        **THE COURT:**  What happened with the other one?

14        **MR. GORMLEY:**  I'm sorry?

15        **THE COURT:**  Where did the other one come from that

16   the government is urging on you?

17        **MR. GORMLEY:**  I believe they came from the runners,

18   the runners withdrawing money or attempting to withdraw

19   money.  That as part of this conspiracy that the government

20   says that Ms. Reeves participated in by doing the goffering,

21   these things that she did.

22        But that's the difference between the parties'

23   positions.

24        And it is our position that as to the money which

25   she pled guilty and which she has taken the actual

1    withdrawals and there were some of, in that instance some of

2    the money was not successfully withdrawn.  And we have

3    given -- she has accepted responsibility for that also,

4    Judge.

5              **THE COURT:**  What do you say?

6              **MR. BERMAN:**  Your Honor, two things.

7              First of all, I think we're all a bit confused

8    about the discussion that occurred before.  Let me start by

9    correcting.

10             If you reduce by three points because you don't

11   charge her with being a role enhancement, she actually gets

12   down to a fourteen.  So her --

13             **THE COURT:**  Which is how many months?

14             **MR. BERMAN:**  18 to 24 months.  Okay.  So I was

15   wrong before when I said 24 to 30 months.  Is that correct?

16             **THE PROBATION OFFICER:**  Yes.

17             **MR. BERMAN:**  Okay.

18             Now, the other thing, specifically on the amount of

19   the loss, let me explain how we calculated this loss.

20             What the defendant pled guilty to is she pled

21   guilty to specifically a few counts of the indictment.

22   Those specific counts of the indictment related to conduct

23   that occurred by two of the runners, Billy Chapman and Barry

24   Dent Smith.

25             As I explained, Billy Chapman is the person that

1    the defendant drove to the bank on at least one occasion.

2         And Barry Dent Smith is the person who cashed the

3    fraudulent check that the defendant stole from the nursing

4    home.  So the defendant actually pled guilty to the count

5    involving the theft of that check.

6         The way the government reaches its number for loss

7    is that the specific count in the indictment, as is always

8    true in these cases, doesn't cover all of the conduct that

9    occurred in this case.  So in addition to the specific

10   counts in the indictment, the government submits the

11   defendant ought to be responsible for the related conduct

12   loss which is the other checks cashed by each of the two

13   runners that the defendant has already admitted being

14   involved with and one of which includes other checks which

15   were stolen at the same time from Standish Village Nursing

16   Home, or I should say around the same time as the checks

17   that the defendant has already admitted in her plea that she

18   was --

19        **THE COURT:**  So she gets tagged twice for the same

20   conduct essentially.

21        **MR. BERMAN:**  No, because multiple checks were

22   stolen.  She pled guilty for the cashing of one of those

23   checks.  Two of the other checks are not specifically

24   charged in the indictment but they were also cashed.  And as

25   a result, the defendant ought to be held accountable for the

1    full amount of all of the checks, not just the specific

2    counts the government happened to put in the indictment.

3              **THE COURT:**  Okay.  I understand.

4              Yes.

5              **THE PROBATION OFFICER:**  I'm sorry, Judge.  I just

6    wanted to point out one thing.

7              In defense counsel's calculation he subtracts three

8    for acceptance but I think the guidelines only allow for two

9    because the adjusted offense level ends up being fifteen.

10    Because that's below sixteen the guidelines only allow for

11    minus two.

12             **MR. GORMLEY:**  I stand corrected then, Judge, on

13    that point.

14             **THE PROBATION OFFICER:**  So if you were to agree

15    with the defendant on all of her points, it would be a total

16    offense level of 13, criminal history category II, which is

17    15 to 21 months.

18             **MR. BERMAN:**  So I guess what that means, Your

19    Honor, if I may, is that we are not talking -- assuming that

20    you have already taken off the table the upward role

21    adjustment over my objection, then I think what we are

22    talking about is really only a one-level adjustment at this

23    point based on the amount of the loss you find.

24             But the total loss as calculated by the government

25    comes up to what's in the probation report based on the fact

```
 1    that the defendant, as I said, was involved in conduct in

 2    addition to the conduct that was charged in the bank.

 3              THE COURT:  Okay.  Ms. Reeves, I am going to

 4    sentence you now.

 5              As one who faces sentencing, you can tell me

 6    anything that may be on your mind if you would care to do

 7    so.

 8              If you would prefer to remain silent, you may

 9    remain silent without fear of being prejudiced.

10              It is up to you.  If you want to speak, go ahead.

11    If you don't, that is okay.

12              MS. REEVES:  I'm sorry I committed a crime.  I'm

13    sorry about I broke the law.

14              THE COURT:  Okay.  What I am going to do is I am

15    going to accept the defendant's arguments and accept the

16    Probation Department's advice as to the consequence that it

17    is a two, not a three.  Is that what you are telling me?

18              THE PROBATION OFFICER:  In regard to acceptance of

19    responsibility?

20              THE COURT:  Yes.

21              THE PROBATION OFFICER:  Yes.

22              THE COURT:  Okay.  So I am going to take that

23    off -- no, the leadership role.

24              THE PROBATION OFFICER:  Oh, I did a plus three for

25    role.
```

1      **THE COURT:**  You did?

2      **THE PROBATION OFFICER:**  Yes.

3      **THE COURT:**  That I don't -- that is the one I am

4    talking about.

5      **MR. BERMAN:**  So then, Your Honor, I think that

6    brings us from, initially from a level 20 down to a level

7    17.  And then there is this issue of loss.  How you find on

8    that determines how much is then reduced because of

9    acceptance of responsibility.

10     **THE COURT:**  Yes, I just want to make sure she

11   understands what I am talking about.

12         And I agree with the calculation of Mr. Gormley

13   with respect to the loss.

14         So you put those two together and how does it come

15   out?

16     **THE PROBATION OFFICER:**  Thirteen, a total offense

17   level of thirteen, criminal history category II, 15 to 21

18   months.

19     **THE COURT:**  15 to 21 months.  Do you agree that

20   that is the range?

21     **MR. GORMLEY:**  I do, Your Honor.

22     **THE COURT:**  Okay.  That is the sentence I am going

23   to impose, fifteen.  All right.

24         Now we will take the next case.

25     **THE PROBATION OFFICER:**  Supervised release, Your

1    Honor?

2              THE COURT:  Yes.

3              THE PROBATION OFFICER:  Three to five years.

4              THE COURT:  Three.

5              THE PROBATION OFFICER:  Restitution?

6              THE COURT:  Can she do it?  Does she have any

7    money?

8              THE PROBATION OFFICER:  This is in case she does

9    somehow come into money.

10             THE COURT:  All right.  During the period of

11   supervised release if she does get fortunate, she hits the

12   Megabucks or something like that, then we will give you an

13   opportunity to go after her.

14             Is that fair?

15             THE PROBATION OFFICER:  And the $900 special

16   assessment.

17             THE COURT:  The $900, is that what it is?

18             THE PROBATION OFFICER:  Yes, Your Honor.

19             MR. BERMAN:  Your Honor, I just want to clarify one

20   thing on that, which is for the restitution amount, I

21   believe the restitution is mandatory.  And I don't think

22   that you can legally limit it to the amount of time that

23   she's on supervised release so I would ask that you -- she

24   may not be able to pay it but then some sort of payment

25   schedule be set up by the Probation Department.

1      I believe under the law, and Probation will correct

2  me if I'm wrong, that the Court must order restitution.

3      **THE COURT:**  Well, I am ordering it.  I am just

4  saying that she has to do it during the probationary

5  period --

6      **MR. BERMAN:**  No, but if for some reason it's not

7  paid during the probationary period, I don't think that it

8  then goes away because it hasn't been paid.

9      **THE PROBATION OFFICER:**  Correct, Your Honor.  It

10  will get handled by the Financial Litigation Unit of the

11  U.S. Attorney's Office.

12      **THE COURT:**  But not as part of my sentence?

13      **THE PROBATION OFFICER:**  If during her --

14      **THE COURT:**  I think I understand what you are

15  saying.  I don't have all of that at my fingertips but what

16  you are saying does sound familiar to me.

17      But I am just talking about during my sentence, she

18  has got to make that during the three years probationary

19  period, the supervised release period.

20      If she doesn't, then I guess as a matter of law it

21  gets kicked over to another department and they go off after

22  her in a different way.

23      **THE PROBATION OFFICER:**  Correct.

24      **MR. BERMAN:**  That's correct.

25      **THE COURT:**  So we are all saying the same thing I

1   think.

2           **THE PROBATION OFFICER:**  Yes.

3           **MR. BERMAN:**  I think we are, yes.

4           **THE COURT:**  Okay.  All right.

5           **MR. BERMAN:**  Okay.  Now, should I move on to the

6   other defendant, Your Honor?

7           **THE COURT:**  Yes.

8           **MR. BERMAN:**  Alvin Reeves I think presents a very

9   different picture for the Court.  And I want to spend a

10  little bit of time tracing through the history of how we

11  ended up here.

12          Alvin Reeves was initially prosecuted in this

13  district in front of Judge Keeton in --

14          **THE COURT:**  I noticed that.  Was that for this

15  case?

16          **MR. BERMAN:**  No.  That was a prior case.  It was

17  essentially an identical charge or identical type of charge

18  I should say that related to the very same type of conduct

19  that occurred a couple years earlier.  He was in front of --

20  he was prosecuted for that.  It was also identity theft,

21  also bank fraud.  He ran a ring involving some of the same

22  people.

23          And Judge Keeton in a number of ways gave the

24  defendant a break when he sentenced him to, I think it was

25  approximately two years.  And --

1    **THE COURT:**  26 months or something like that.

2    **MR. BERMAN:**  I'm sorry?

3    **THE COURT:**  I think I read 26 or 27 months.

4    **MR. BERMAN:**  I think that that's right.

5    And he gave him a break in part because he ruled

6    that the defendant's criminal history overstated his

7    criminal history range and made some statements about how he

8    was giving the defendant another chance and was really

9    giving the defendant an opportunity to reform himself

10   because the defendant came in, much as he does today, with I

11   think a long story about how he was definitely going to

12   reform.

13   Your Honor, the defendant's release from prison was

14   in, I believe it was November of 2004.

15   **THE PROBATION OFFICER:**  11/7/03.

16   **MR. BERMAN:**  I'm sorry, November 2003.

17   The investigation that led to this case began

18   almost immediately upon the defendant's release.  The first

19   count charged in the indictment is charged in December of

20   2003 while the defendant was very much still on supervised

21   release.

22   The defendant immediately upon being released went

23   back, reconstituted his bank fraud ring and, again, began to

24   direct at least these three runners that we charged -- there

25   are others we believe that existed although they're not

1    charged -- and reconstituted his bank fraud ring.

2            The defendant then continued in that activity until

3    he was arrested at least, until he was arrested in the

4    instant case.

5            The defendant as I mentioned earlier spent a brief

6    period of time in jail during which he and his sister and

7    codefendant at that point began to coordinate activities

8    revolving around obstruction of justice in this case.

9            The defendant -- one of the witnesses at trial

10   would have said that the defendant sent her a letter after

11   Alvenia had written to her and told her to say Dwayne Thomas

12   was the ring leader, the defendant sent her a letter saying

13   essentially the same thing, that she should go in and say

14   that it was him, it was Thomas.

15           And, Your Honor, this case essentially, as I said,

16   came exactly on the heels of his release from prison on the

17   last case.

18           The defendant fought tooth and nail to stay out of

19   any form of --

20           **THE COURT:**  21 months is what Keeton gave him.  Go

21   ahead.

22           **MR. BERMAN:**  The defendant fought tooth and nail to

23   stay out of pretrial custody of any form, including drug

24   treatment, during the time period in which prior to his

25   guilty plea in this matter.

1          And now, of course, the defendant decides that what

2     he really needs in life is drug treatment, though he passed

3     up many opportunities for that during the past really almost

4     two years this case has been pending.

5          For all these reasons, Your Honor, given the stake

6     here, I think the guideline sentence which is 75 months

7     is -- that's the low end of the guidelines -- is a very

8     appropriate sentence.

9          The defendant in his sentencing memo argues

10    essentially two things.  And I just want to discuss them in

11    advance, which is, No. one, he argues that the loss

12    shouldn't be the total amount as calculated by the

13    government but rather should be a lesser amount because the

14    defendant says he ought not be responsible for intended

15    loss.

16         There were occasions when people went into banks

17    and attempted withdrawal of money but that effort failed.

18         The guidelines are very clear that loss is both

19    actual and intended loss.  And the defendant argues that

20    that's unfair to him because if you return any of the money

21    that you receive --

22         **THE COURT:**  You get credit.

23         **MR. BERMAN:**  -- you get credit.

24         Now, there may be some logic to that argument in a

25    different case; but I think it's worth pointing out that the

1    defendant never returned any money, not only from this case,

2    he paid essentially zero restitution on the case he had in

3    front of Judge Keeton.

4        So in the five years that he has been involved in

5    this practice he has never returned any money.  And thus it

6    is a little rich to suggest that he is somehow being

7    penalized because he never had the opportunity to return the

8    money he failed to steal in the first place.

9        So I think the loss calculation is accurate.

10       The other thing, Your Honor, is the defendant

11   submitted a report from a psychologist and makes an argument

12   that essentially he deserves leniency because this is

13   ultimately a drug problem.

14       I obviously don't see it that way.  I would point

15   out that this is a somewhat different plea for leniency than

16   I think often happens in these sorts of cases.

17       The defendant doesn't start with a long recitation

18   of how miserable his upbringing was.  It is perfectly clear

19   based in part on how many people you see in the courtroom

20   today that the defendant has been long part of a loving and

21   supportive family who gave him, though perhaps they did not

22   have a lot of financial means, they gave him every effort in

23   their ability to help him succeed.

24       They got him to the point where he was in college

25   and had received a full scholarship to college.  And in the

1    report here it essentially says it was only when he was in

2    college around wealthier people that he suddenly decided he

3    wanted money and was going to seek whatever means he could

4    to get it.  And essentially that's what the defendant was

5    doing ever since.

6          That doesn't strike me as a story that is of

7    greater hardship than anybody else who walks in here.  In

8    fact, if anything, it seems a lot less than most people who

9    walk in here.  He had every opportunity to succeed and when

10   he was finally given that, he instead chose to commit bank

11   fraud and not be stopped regardless of what happened.

12         **THE COURT:**  Okay.  Before I let you speak to that,

13   I am going to take a recess, okay, for about five minutes.

14   Okay.

15

16         (Recess.)

17

18         **THE CLERK:**  All rise for the Honorable Court.

19         **THE COURT:**  Sit down everybody.

20         Thank you.

21         Okay.  Thank you more for permitting me to

22   interrupt you.  Go ahead.

23         **MR. PELLETIER:**  Good morning, Your Honor.

24         **THE COURT:**  I have read your papers so you

25   understand that.

1    **MR. PELLETIER:**  As you know, we are asking for a

2    sentence of 48 months.  And I believe that 48 months

3    actually is the appropriate sentence here because it

4    considers not only the offense but it considers the

5    recidivism involved but it also takes into account the

6    factors under 18 U.S.C. 3553(a).

7        And in this case we firmly acknowledge that --

8        **THE COURT:**  Again, just so we are all on the same

9    page, the guideline recommendation is 70?  Not your

10   recommendation.  I am talking about the guideline

11   recommendation.

12       **THE PROBATION OFFICER:**  Yes, 75 to 87 months.

13       **THE COURT:**  75 to?

14       **THE PROBATION OFFICER:**  75 to 87 months.

15       **THE COURT:**  Thank you.

16       All right.  Go ahead.

17       **MR. PELLETIER:**  And the government had indicated

18   that they're recommending 75 I believe; is that correct?

19       **THE COURT:**  What they recommend, not that --

20       **MR. BERMAN:**  The government recommends 75.

21       **THE COURT:**  The government.  I am talking about

22   them (indicating).

23       Go ahead.

24       **MR. PELLETIER:**  As I indicated, Your Honor, we

25   recognize that this is a crime of recidivism but I believe

1    that a 48-month sentence takes into account the recidivism

2    that occurred here and takes into account the background and

3    the defendant's factors of why maybe this incurred here.

4        One thing that I argued in the sentencing memo that

5    I want to point out to the Court is that there is a lot

6    of -- the Court has to take the Sentencing Guidelines into

7    account as a factor under 3553(a).  But one of the things

8    that the guidelines do here and the statute is that they

9    pile it on in terms of this defendant.

10       He receives, under 18 U.S.C. 1028(a) he receives a

11   two-year mandatory minimum for aggravated identity theft

12   which is essentially the same conduct, a combination of the

13   identity theft and bank fraud that occurred here.

14       In calculating his criminal history he receives an

15   increase for committing this crime while on supervised

16   release.  In calculating his criminal history, again he

17   receives another increase for committing this crime less

18   than two years after being convicted of an offense.

19       **THE COURT:**  But aren't these relevant factors?

20   Doesn't that show his thumbing his nose at the system?

21       **MR. PELLETIER:**  I don't believe so.  Your Honor, I

22   think --

23       **THE COURT:**  Suppose it were the other way.  Suppose

24   he were clean as a whistle for a period of five years and

25   then committed a crime.  You would be here arguing, look, he

1    didn't do anything for five years.  He just went off the

2    track a little bit.

3         **MR. PELLETIER:**  Well, I don't think, in the

4    abstract, I don't think taking any one of these factors into

5    consideration is fine but when they all start to add up and

6    you fall into everything and he essentially is being

7    punished more for his status than the actual crime itself,

8    then they add so much that it becomes, that it becomes too

9    much of a sentence.  He is actually being punished not for

10   the crime itself but for all these other factors that just

11   happened to -- that he happens to fall into.

12        That's where --

13        **THE COURT:**  I understand your argument.  Go ahead.

14        **MR. PELLETIER:**  The other portion with Mr. Reeves,

15   I just want to briefly touch on a couple of things.

16        No. one, we made the argument with regard to

17   obstruction of justice.  And Mr. Reeves played clearly a

18   lesser role than his sister in this particular count.

19        And Mr. Reeves does admit to the obstruction,

20   doesn't admit to the phone call, but he said that this

21   contact with this person never occurred and that this --

22   there was no letter that was ever produced.  And if this

23   person were to testify here, that there wouldn't be any

24   letter there.

25        And Mr. Reeves was always adamant --

1          **THE COURT:**  What about the letter?  That is

2     troublesome.

3          **MR. BERMAN:**  It is true that --

4          **THE COURT:**  If you take that out of the case, then

5     what happens?

6          **MR. BERMAN:**  Nothing, Your Honor, because the

7     defendant pled guilty to obstruction of justice.  He was

8     involved in essentially coordinating with his sister the

9     obstruction of --

10         **THE COURT:**  So the letter is inconsequential in

11    terms of the sentence?  In other words, if I think I am not

12    persuaded, I find that I am not persuaded that there was a

13    letter because then under an appeal that has no effect, is

14    that what you are -- can you agree?

15         **MR. PELLETIER:**  Well, we would ask -- I mean,

16    partly we'd ask that the Court either look at it from the

17    perspective of 3553(a) and reduce it accordingly by reducing

18    it a level, which the guidelines don't permit you to reduce

19    it by one level, at least on my reading of the guidelines,

20    but under 3553(a) the Court is able to do that in taking

21    into account a lesser role here.

22         **MR. BERMAN:**  Your Honor, the government -- I don't

23    think that the letter matters in the sense in which are

24    asking because the defendants pled guilty to essentially

25    coordinating witnesses or conspiring with his sister to

1    obstruct justice in the manner described in the indictment.

2         So whether he actually sent the letter himself or

3    it was all done through his sister is a matter of --

4         **THE COURT:**  There is no letter from anything.  I

5    mean, there is --

6         **MR. BERMAN:**  No, no, no.  No one is disputing that

7    these witnesses were contacted by Alvenia.  And the

8    witnesses were told to make the statement that Dwayne Thomas

9    and not Alvin Reeves was the leader of the bank fraud ring.

10        I don't understand the defense to be making the

11   argument that that didn't happen.

12        **MR. PELLETIER:**  No.  I mean, what Mr. Reeves

13   pleaded guilty to was having this conversation, these

14   preliminary conversations with his sister.  And they touched

15   on possibly pinning the act on this Dwayne Thomas.

16        But beyond that he didn't take part in this

17   conspiracy anymore.  She was the person who went out and

18   actually contacted the people.  And Mr. Reeves had no

19   involvement in that aspect of this case beyond that.

20        And that's why I am arguing he played -- with

21   regard to that count, obstruction, he played a lesser role

22   in tampering with witnesses.

23        **THE COURT:**  Okay.

24        **MR. PELLETIER:**  My argument also goes with the loss

25   factor.  I do understand the guidelines do say that you're

1    technically supposed to punish intended loss at the same

2    rate as actual loss.

3            But I would argue to the Court, again, under a

4    3553(a) analysis that punishing somebody with -- by actual

5    losses as opposed -- and actual intended loss at the same

6    level isn't necessarily a fair result in this case.

7            I would argue that under other crimes we don't

8    punish the attempt for the same way we do punish the actual

9    crime itself.  We don't punish attempted murder the same way

10   we would punish the actual crime.  And I would say that at

11   least he should be given some recognition of the fact that

12   some -- the Court should at least take into consideration

13   the fact that we are talking about two levels here.

14           And the Court can possibly reduce it by at least a

15   level to get him down to just account for the actual loss

16   and maybe a portion of the intended loss but not giving him

17   the full two levels.  If I am making myself clear, Your

18   Honor.

19           **THE COURT:**  You are making yourself clear.

20           What would that do to the sentence?

21           **THE PROBATION OFFICER:**  The range would be 65 to 75

22   months.

23           **THE COURT:**  So if we took one down?

24           **THE PROBATION OFFICER:**  If we reduce it to the next

25   level for loss, instead of a ten it would be an eight so the

1       total offense level would be 18.  And the criminal history

2       category IV results in a 65- to 75-month range.

3              **MR. PELLETIER:**  I mean, I agree with those

4       calculations in terms of the arithmetical calculation.

5              The other portion of my argument deals with

6       Mr. Reeves' background and Mr. Reeves' history here.

7              The government indicated that Mr. Reeves has a

8       loving and supportive family.  And you look and here they

9       are (indicating).  But there seems to be an argument that he

10      all of a sudden found wealth in college and, therefore, he

11      wanted part of that.

12             What the government didn't mention is the fact that

13      his drug problem actually began in college.  That's when he

14      started, began using cocaine.  That's when his life really

15      went on a downward spiral.  That's when he lost his

16      basketball scholarship.  That was his opportunity.  And he

17      lost, basically lost his education.

18             He was out, was using this as a way to fend for

19      himself and then with the cocaine he was living a life, as

20      Dr. Gray had indicated, living a life almost like he was

21      Donald Trump because he was high on these drugs.  And this

22      was essentially controlling his life during this period.

23             He got caught in this spiral.  He got caught in

24      this spiral in drugs.  And he when he got caught the first

25      time, he went into -- he pleaded guilty and was sentenced to

1    21 months by Judge Keeton.  And Judge Keeton I believe at

2    the sentencing hearing identified there is a possible high

3    risk of recidivism here.

4         And I think partly that risk of recidivism was he

5    went into the Federal Bureau of Prisons, Mr. Reeves never

6    received, he's never received any drug treatment in that

7    prison.  Never received any educational counselling.  The

8    opportunity for him to get help wasn't there.  And that's a

9    major factor in the 3553(a) analysis.  It's not just

10   deterrents and punishment but there is also a rehabilitation

11   factor there.  And there is also education and treatment.

12   Those are major goals of 3553(a).

13        He was never afforded that.  In a way it's like

14   someone who is sentenced to prison or punished for being a

15   child molester and who doesn't get any treatment while they

16   are in prison and then they're shocked that they reoffend.

17        Mr. Reeves came out, he was still in this culture

18   of drugs, he was still caught in it.  He wasn't receiving

19   help.  And because of that, his life just continued to

20   spiral out of control.

21        And the thing is Mr. Reeves, as Dr. Gray pointed

22   out, Mr. Reeves, his life, he minimized his drugs.  He

23   minimized things like a suicidal ideation and partly was in

24   denial but he didn't -- he wasn't somebody that on the

25   surface was crying out for help.

1          The point is that he is -- he is a person who is

2     addicted to drugs, who was caught in this spiral at the

3     time.

4          And that is something we would ask the Court to

5     take into account in the factors.  But we are not saying in

6     this analysis that the Court shouldn't punish him as a

7     recidivist because we are saying the Court should punish him

8     as a recidivist.

9          But the Court, I am asking the Court to take into

10    account the situation of his drug use and the situation that

11    he didn't receive any help in prison the first time around.

12         And I'd ask the Court to fashion a sentence that

13    would be appropriate for that.  And I would submit under

14    3553(a) a 48-month sentence would do that.

15         I also want to point out that Dr. Gray is here

16    today and he is perfectly willing to testify.  And he may be

17    able to elucidate some of these points much better than I

18    can with his clinical background.  So if the Court does wish

19    to hear from him, he is here.

20         **THE COURT:**  Do you want to be heard?

21         **MR. BERMAN:**  Your Honor, as I said earlier, I think

22    the fact that the defendant's recidivism and immediate

23    recidivism upon release from prison and the scope of this

24    crime, I don't think there is any double counting going on

25    here.

1        I think the guideline range of 75 months is the low

2    end of a very appropriate sentence and the government would

3    urge the Court to adopt that sentence.

4        **THE COURT:**  Okay.  Mr. Reeves, you are about to be

5    sentenced.  As one who faces sentencing, you have the right

6    to address the Court.  That is, you can tell me anything

7    that may be on your mind if you would care to do so.

8        If you would prefer to remain silent, you may

9    remain silent without fear of being prejudiced.  It is up to

10   you.  If you want to speak, go ahead.  If not, that is okay.

11       **MR. REEVES:**  I'd like to apologize to the Court.

12   I'd like to apologize to the victims in this case.  I'd like

13   to apologize to my family.

14       Your Honor, I'm just asking for help.  If I get

15   help, I think that would break the cycle of recidivism.  And

16   I don't need to make up no story about my addiction.  I

17   don't think that's something you make up a story about.

18       So with due process I just ask to be sentenced

19   fair.

20       Thank you.

21       **THE COURT:**  Okay.  It is very compelling arguments

22   on both sides.

23       What I am going to do is give him a sentence of six

24   zero, sixty months.  And what else goes with it?  The

25   supervised release is what?

1    **THE PROBATION OFFICER:**  The guideline range is at

2    least two but not more than three.

3    **THE COURT:**  Two years.

4    **THE PROBATION OFFICER:**  I'm sorry.  It should be

5    four years.

6    **MR. BERMAN:**  I think the guideline range, if you

7    are talking about supervised release?

8    **THE COURT:**  Yes.

9    **MR. BERMAN:**  I think, isn't it up to five years?

10   **THE PROBATION OFFICER:**  I'm sorry, yes.  No more

11   than five --

12   **THE COURT:**  No, what is the minimum?  Three?  It

13   must be three.

14   **THE PROBATION OFFICER:**  I think it's three to five,

15   Your Honor.

16   **MR. BERMAN:**  I believe three to five is right.

17   **THE COURT:**  All right.  Three.

18   **MR. BERMAN:**  Again, the issue about restitution.

19   **THE PROBATION OFFICER:**  I have $115,315.

20   **THE COURT:**  Well, I will issue the same order with

21   the same understanding, that is, it be accomplished during

22   the period of supervised release.

23        And then, as the U.S. Attorney has pointed out,

24   then if it is not paid by then, it becomes a collection

25   matter for the Department of Justice.

1          **THE PROBATION OFFICER:**  A special assessment of

2      $3,000.

3          **THE COURT:**  For?

4          **THE PROBATION OFFICER:**  The ten counts.

5          **THE COURT:**  Okay.

6          **MR. BERMAN:**  And a fine unless the Court finds that

7      there is no ability to pay one.

8          **THE COURT:**  He doesn't have the money to pay?

9          **THE PROBATION OFFICER:**  No.

10         **THE COURT:**  No fine.

11         **THE PROBATION OFFICER:**  So the Probation Office

12     would like to read into the record certain special

13     conditions.

14         **THE COURT:**  Go ahead.

15         **THE PROBATION OFFICER:**  The defendant is prohibited

16     from possessing a firearm or other dangerous weapon.  The

17     defendant is to pay the balance of restitution according to

18     a court-ordered repayment schedule.

19         The defendant is prohibited from incurring new

20     credit charges or opening additional lines of credit without

21     the approval of the probation officer.

22         The defendant is to provide the probation officer

23     access to any requested financial information.  The

24     financial information provided to the Probation Office by

25     the defendant may be shared with the Financial Litigation

1    Unit in the U.S. Attorney's Office.

2            The defendant shall use his true name and will be

3    prohibited from the use of any aliases, false dates of

4    birth, false Social Security numbers, incorrect places of

5    birth, and any other pertinent incorrect identifying

6    information.

7            The defendant is also to participate in a program

8    for substance abuse as directed by the Probation Office

9    which program may include testing not to exceed 104 drug

10   tests per year to determine whether the defendant has

11   reverted to using alcohol or drugs.

12           The defendant shall be required to contribute to

13   the cost of services for such treatment based on the ability

14   to pay or availability of a third-party payment.

15           That's it.

16           **THE COURT:**  Under those, he is not prohibited from

17   having a drink at a wedding or something like that, you are

18   talking about --

19           **THE PROBATION OFFICER:**  Excess.

20           **THE COURT:**  Okay.  Good.

21           **MR. BERMAN:**  Your Honor, just a couple other

22   things.

23           I wanted to ask you to clarify, is this based on

24   your calculation of the guidelines or is this a

25   non-guideline sentence?

1          **THE COURT:**  I think it is a guideline sentence.

2          **MR. BERMAN:**  So how do you calculate it?  I am

3     asking that you put on the record how you calculate the

4     guidelines.

5          **THE PROBATION OFFICER:**  The loss?

6          **THE COURT:**  Yes.

7          **THE PROBATION OFFICER:**  It goes from a ten to an

8     eight.

9          **MR. BERMAN:**  Doesn't that --

10          **THE PROBATION OFFICER:**  That is 65 to 75 months.

11          **MR. BERMAN:**  And then you go down from there to

12     sixty?

13          **THE COURT:**  Yes.

14          **MR. BERMAN:**  Okay.

15          **THE COURT:**  Thank you for asking.

16          **MR. BERMAN:**  I would note my objection both to your

17     guideline calculation and to the deviation downward --

18          **THE COURT:**  Okay.

19          **MR. BERMAN:**  For the record.

20          And the final thing that I think needs to be

21     addressed today, Your Honor, is that pursuant to the

22     guidelines and the statutes it is recommended that this

23     sentence be consecutive to the sentence that the defendant

24     received for his violation of supervised release.  That's

25     the position under --

```
 1              THE COURT:  I am not going to do that.
 2              MR. BERMAN:  Okay.  Then I would object to that as
 3       well.
 4              THE COURT:  Okay.  I gave you lots of objections
 5       anyway.
 6                  (Laughter.)
 7              MR. BERMAN:  Thank you.
 8              THE COURT:  Let the record reflect that was said
 9       with good humor and a smile creased the faces of the U.S.
10       Attorneys.
11                  (Laughter.)
12              THE COURT:  Yes, go ahead.
13              MR. GORMLEY:  Thank you, Your Honor.
14              Could I be heard on behalf of Ms. Reeves briefly on
15       the 3553(a) sentence?
16              THE COURT:  I sentenced her already.
17              MR. GORMLEY:  I --
18              THE COURT:  I sentenced her already.  I am not
19       going to revisit it.
20              MR. GORMLEY:  I understand.
21              THE PROBATION OFFICER:  I would just like to
22       clarify.  I misspoke regarding the restitution amount for
23       Ms. Reeves.  Based on your findings I believe that it should
24       be $42,000.
25              THE COURT:  Okay.
```

1      **THE PROBATION OFFICER:**  And the same financial

2  conditions that Mr. Buckley read into the record I would ask

3  for Ms. Reeves.  That would be all of them but the substance

4  abuse treatment one.

5      **THE COURT:**  Okay.

6      **MR. PELLETIER:**  Your Honor, I also would ask that

7  the Court make a recommendation that Mr. Reeves participate

8  in the Bureau of Prisons Drug Treatment Program.

9      **THE COURT:**  Yes, most definitely.

10      **MR. PELLETIER:**  Thank you, Your Honor.

11      **MR. GORMLEY:**  May Ms. Reeves who is on pretrial

12  release, may she self-report to the sentence which Your

13  Honor has imposed?

14      **THE COURT:**  Any objection?

15      **MR. BERMAN:**  No objection, Your Honor.

16      **THE COURT:**  Okay.  Work out a date with Zita.

17      **THE CLERK:**  March 19th.

18      **THE COURT:**  March 19th.

19      **THE CLERK:**  Yes, Judge.

20      **THE COURT:**  Anything else?

21      Okay.  Both defendants here, you have been

22  sentenced.  And as defendants who have been sentenced, you

23  have a right to appeal that sentence if you would care to do

24  so.

25      If you would like to appeal but don't have funds,

1  then you will be permitted to appear without payment of any

2  fee.

3       If you don't have funds for a lawyer, one will be

4  provided for you.

5       You have ten days to file a notice of appeal.

6       **MR. BERMAN:**  Yes, Your Honor.  I just want to add

7  that the defendants both in their plea agreements both

8  waived their right to appeal so whatever rights is subject

9  to that waiver.

10      **THE COURT:**  I understand that and you know my

11  position on that.

12      **MR. BERMAN:**  Yes.

13      **THE COURT:**  Okay.

14      Anything else?

15      **MR. BERMAN:**  Nothing from the government.

16      **THE COURT:**  All right.  That is it.  Thank you.

17      **MR. PELLETIER:**  Thank you, Your Honor.

18      **MR. GORMLEY:**  Thank you, Your Honor.

19

20      (WHEREUPON, the proceedings were recessed at 11:30

21       a.m.)

22

23

24

25

C E R T I F I C A T E

I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377